IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CASE NO. 5:11-cv-00072-RLV-DSC

| | |
|---|---|
| FREDERICK W. TAYLOR and ALEKSANDRA TAYLOR, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) **MEMORANDUM AND ORDER** |
| OCWEN LOAN SERVICING, LLC, and POORE SUBSTITUTE TRUSTEE, LTD., | ) ) ) ) ) |
| Defendants. | ) ) |

**THIS MATTER** is before the Court on Defendants Ocwen Loan Servicing, LLC, and Poore Substitute Trustee, Ltd.'s "Motion for Judgment on the Pleadings or for Summary Judgment," filed December 30, 2011, the date on which discovery closed, and Motion to Strike Response in Opposition to Motion for Summary Judgment, filed January 26, 2012. (Docs. 8, 11.)

## I. PROCEDURAL BACKGROUND

This case follows a foreclosure action arising out of Plaintiffs Frederick W. Taylor and Aleksandra Taylor's failure to make the required payments under a promissory note, secured by a deed of trust, executed on or around January 10, 2005. Plaintiffs failed to appear at the foreclosure hearing, and on November 16, 2010, an order was entered permitting the foreclosure to proceed pursuant to N.C. Gen. Stat. § 45-21.16. (Doc. 9-6.) Plaintiffs failed timely to appeal this order, and on December 7, 2010, Defendant Poore effectuated a foreclosure sale of the property at the Catawba County Courthouse, at which Defendant Ocwen placed the high bid. Plaintiffs neither placed a bid at this foreclosure sale nor filed an upset bid within the ten-day

1

period allotted by N.C. Gen. Stat. § 45-21.27. Although the record is devoid of any materials suggesting that Plaintiffs timely requested an injunction, *see* N.C. Gen. Stat. § 45-21.29A (rendering the rights of the parties to the sale "fixed"); N.C. Gen. Stat. § 21.34 (permitting the application for an injunction prior to the parties' rights becoming fixed), Plaintiffs have claimed, within their late-filed Memorandum in Opposition, that Plaintiffs "filed their original petition for injunctive relief on December 17, 2010 . . . " (Doc. 10 at 7); (*contra* Doc. 9 at 4) (arguing that Plaintiffs failed timely to request an injunction).

On January 11, 2011, Plaintiffs filed their "Emergency Injunction to Vacate Sale and Enjoin Issuance of Title" in General Court of Justice, Superior Court Division, Catawba County. (Doc. 1-4 at 22) (displaying a filing date of January 11, 2011, although counsel's verification of pleading is dated December 17, 2010). On March 21, 2011, a hearing was held on this motion. Soon thereafter, Judge Robert C. Ervin issued a written order denying the motion, having found that "the relief sought by the Plaintiffs is not available under the relevant statute because the rights of the parties to the sale became fixed on December 17, 2010, the expiration of the ten-day upset bid period." (Doc. 1-7 at 37.) In the alternative, Judge Ervin found that "a civil action ha[d] not properly been commenced pursuant to North Carolina Rule of Civil Procedure 3 as no Complaint ha[d] been filed in this matter." (*Id.*) However, Judge Ervin further ordered "that Plaintiffs have ten (10) days from the signing of this Order to file a Complaint in this action. During which time, the Court orders that Defendant[ Ocwen] not transfer title to a third party." (*Id.*) Ten days later, Plaintiffs filed in Catawba County Superior Court their Complaint, the contents of which are nearly identical to those of the injunction motion. Therein, they seek vacatur of the judgment of foreclosure and sale of Plaintiffs' primary residence because Defendant Ocwen violated Home Affordable Modification Program ("HAMP") Guidelines and

because defense counsel's role as registered agent of Defendant Poore violated the neutrality requirements of N.C. Gen. Stat. § 45-21.16(7)(b). (Doc. 1-7 at 32.) On May 13, 2011, Defendants filed with this Court their Notice of Removal. (Doc. 1.)

## II. STANDARD OF REVIEW

Defendants have moved for dismissal of Plaintiffs' claims pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(c), and in the alternative, 56. Rule 12, which specifies the manner in which certain defenses must be raised, is closely related to Rule 56, particularly with respect to Rule 12(b)(6), which allows the defense of "failure to state a claim upon which relief can be granted" to be raised by motion, and Rule 12(c), which permits a motion for judgment on the pleadings. Both provisions allow conversion of the motion into a motion for summary judgment when the court considers matters outside the pleadings to resolve the issues raised by the motion. Fed. R. Civ. P. 12(d). However, where matters without the pleadings are not considered by the Court, as is the case here, such conversion is inappropriate. The Court therefore construes the Motion as one made pursuant to Rules 12(b)(6) and 12(c).

Rules 12(b)(6) and 12(c) are virtually interchangeable, and the Court applies the same standards to each. *Burbach Broad. Co. of Del. v. Elkins Radio Corp.*, 278 F.3d 401, 405–06 (4th Cir. 2002) (deeming this procedural distinction as "one without a difference"); *see also McBurney v. Cuccinelli*, 616 F.3d 393, 410 (4th Cir. 2010) ("As is true of practice under Rule 12(b)(6), it is well-settled that it is within the district court's discretion whether to accept extra-pleading matter on a motion for judgment on the pleadings and treat it as one for summary judgment or to reject it and maintain the character of the motion as one under Rule 12(c).").

A motion filed per Rule 12(b)(6) challenges the legal sufficiency of a complaint, *Jordan v. Alternative Res. Corp.*, 458 F.3d 332, 338 (4th Cir. 2006), measured by whether it meets the

standards stated in Rule 8 (providing general rules of pleading), Rule 9 (providing rules for pleading special matters), Rule 10 (specifying pleading form), Rule 11 (requiring the signing of a pleading and stating its significance), and Rule 12(b)(6) (requiring that a complaint state a claim upon which relief can be granted), *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). While a complaint need not contain detailed factual allegations, the courts require more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (applying Rule 8).

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id.* (quoting Fed. R. Civ. P. 8(a)(2) and *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The decisive standard is that the combined allegations, taken as true, must state a "plausible," not merely conceivable, case for relief. *Sepúlveda-Villarini v. Dep't of Educ. of P.R.*, 628 F.3d 25, 29 (1st Cir. 2010) (Souter, J.) (citing *Iqbal*, 556 U.S. at 678). To have facial plausibility—a standard that lies between the outer boundaries of a probability requirement and the mere possibility of unlawful conduct—the pleading must contain factual content that permits the court, using its "judicial experience and common sense," reasonably to infer the defendant's liability. *Id.*

### III. DISCUSSION

A. Motion to Strike

Local Rule of Civil Procedure 7.1(E) requires that "[r]esponses to motions, if any, . . . be filed within fourteen (14) days of the date on which the motion is served, as evidenced by the certificate of service attached to said motion." Plaintiffs filed without leave of court their response brief twenty-five days after Defendants' Motion for Judgment on the Pleadings or for

4

Summary Judgment was filed. Because Plaintiffs have failed to file their opposition brief in a timely fashion, it may be struck from the record. However, having reviewed Plaintiffs' responsive memorandum and finding that the arguments presented therein do not save Plaintiffs' case from dismissal, the Court shall deny Defendant's Motion to Strike as moot.

B.  Motion to Dismiss

In early 2009 and in response to a growing number of home foreclosures nationwide, the U.S. Department of the Treasury developed the Home Affordable Modification Program ("HAMP"), which aims to prevent avoidable home foreclosures by incentivizing loan servicers to reduce program-eligible homeowners' required monthly mortgage payments. *See Bourdelais v. J.P. Morgan Chase*, No. 3:10-670, 2011 WL 1306311, at *1 (E.D. Va. Apr. 1, 2011) (providing a program synopsis). Although HAMP participation is voluntary for non-government-sponsored entities ("non-GSEs"), Defendant Ocwen, the loan servicer, entered into a servicer-participation agreement with the federal government, which incorporates HAMP program guidelines, procedures, and supplemental directives. (Doc. 1-7 at 3.)

Plaintiffs Taylor are North Carolina homeowners who, in early 2005, refinanced their mortgage loan with a new loan from Charlotte Home Equity, LLC, in the amount of $212,000.00, secured by a deed of trust, which grants a security interest in their primary residence. The promissory note and deed of trust were since transferred and assigned to HSBC Bank USA, N.A., as trustee for the registered holders of ACE Securities Corp. Home Equity Loan Trust, the current owner of the note. Like many Americans amidst the subprime mortgage crisis, the Taylors experienced a number of financial setbacks and had difficulty keeping up with their mortgage payments. They defaulted on their loan on multiple occasions, and foreclosure and the instant claims followed.

Plaintiffs first seek generally to enforce HAMP as third-party beneficiaries of the program. (Doc. 1-7 at 5–14) (citing the HAMP Handbook for Servicers of Non-GSE Mortgages at length). However, the consensus view is that HAMP does not create a private right of action. *See, e.g.*, *Parks v. BAC Home Loan Servicing, LP*, 825 F. Supp. 2d 713, 715 (E.D. Va. 2011) (Gibney, J.) (noting that "[p]laintiffs have typically taken three routes to assert entitlement to a permanent HAMP modification: claiming a private right to sue under HAMP, claiming breach of contract as a third-party beneficiary to a contract between a lender and Fannie Mae (the entity which administers HAMP), and claiming breach of contract based on a loan modification application" and that "[c]ourts have uniformly rejected these claims"). This is because "borrowers are merely incidental, not third-party, beneficiaries to HAMP contracts." *Id.* HAMP-participating non-GSEs are not required to modify eligible loans.[1] Additionally, a plaintiff may only pursue a breach-of-contract claim based on the loan-modification application if that cause of action is independent from HAMP. *Id.* at 716. The Court finds this majority view persuasive.

Plaintiffs direct the Court's attention to *Reyes v. Saxon Mortgage Services, Inc.*, No. 09-1366, 2009 WL 3738177 (S.D. Cal. Nov. 5, 2009), in which the plaintiff was permitted to proceed with a HAMP breach-of-contract claim under a third-party-beneficiary theory. Although, "[a]rguably, one of the purposes of [a servicer-participation agreement] is to assist homeowners," to permit a borrower a direct cause of action under such an agreement is the rule in only a paucity of jurisdictions, and *Reyes* itself did not contain any detailed analysis of HAMP or whether it creates a private right of action. Accordingly, Plaintiffs having failed to state a

---

[1] "Even Fannie Mae, which has rights under the [servicer-participation agreement], cannot force [the servicer] to make any particular loan modification. It can take other steps against [the servicer], including terminating the HAMP agreement, but it cannot impose a modification." *Benito v. Indymac Mortgage Servs.*, No. 2:09-1218, 2010 WL 2130648, at *7 (D. Nev. May 21, 2010).

facially plausible claim, their first cause of action shall be dismissed.

Plaintiffs additionally claim that the foreclosure sale should be invalidated due to the "unclean hands" of Defendant Poore as substitute trustee, citing N.C. Gen. Stat. § 45-21.16(c)(7)(b).[2] Here, Mr. Mathias H. Hunoval, registered agent for the substitute trustee, is now also representing the secured party. The statute by its own terms does not prohibit this. Rather, it prohibits such representation while the substitute trustee is "holding that position in the foreclosure proceeding . . . ." *Id.* Such proceeding had concluded before counsel came to represent Defendant Ocwen (*see* Doc. 1-7 at 37) (deeming the ten-day upset period to have expired and, consequently, the parties' rights "fixed"), and there has been no perceivable violation of the neutrality provision of N.C. Gen. Stat. § 45-21.16(c)(7). Therefore, Plaintiffs' second cause of action shall likewise be dismissed.

---

[2] The provision reads,
Notice shall be in writing and shall state in a manner reasonably calculated to make the party entitled to notice aware of the following: . . . (7) The right of the debtor (or other party served) to appear before the clerk of court at a time and on a date specified, at which appearance he shall be afforded the opportunity to show cause as to why the foreclosure should not be allowed to be held. The notice shall contain all of the following: . . . b. A statement that the trustee, or substitute trustee, is a neutral party and, while holding that position in the foreclosure proceeding, may not advocate for the secured creditor or for the debtor in the foreclosure proceeding.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that Defendants' Motion to Dismiss (Doc. 8) be **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Strike (Doc. 11) be **DENIED** as moot.

The parties shall bear their own litigation costs.

Signed: March 1, 2013

Richard L. Voorhees
United States District Judge